UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

---

COREY WILLIAMS,

                                              Plaintiff,

      -against-

CITY OF NEW YORK,

                                              Defendant.

**COMPLAINT**

Civil Action No. 25-cv-3944

---

Plaintiff COREY WILLIAMS ("Plaintiff" or "Mr. Williams"), by and through his attorneys, LEVY RATNER, P.C., alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, as to which matters he believes substantial evidentiary support will exist after a reasonable opportunity for discovery, as follows against the CITY OF NEW YORK ("City" or "Defendant").

## NATURE OF THE ACTION

1. This is an action to remedy discrimination in employment because of race, sex, and religion and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §§ 2000e, *et seq*.; deprivations of constitutionally and federally protected rights under color of law, including the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, resulting from the City's official policies, practices or customs, in violation of 42 U.S.C. §1983; employment discrimination because of race, sex, religion, and age and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§290 and 296; and employment discrimination because of race, sex, religion,

and age and retaliation in violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§8-101, *et seq*. Plaintiff seeks declaratory and injunctive relief, equitable relief including back pay and front pay, and compensatory and consequential damages to secure future protection and to redress the deprivation of Plaintiff's rights under these federal, state, and local laws.

2. The Plaintiff, Mr. Williams, has been a civil servant with the City of New York for almost a decade, working both as a social worker and a probation officer. During his employment with the City for the past ten years, Mr. Williams, a Black man, wore his Afro-textured hair in locs ("dreadlocks," "dreads," or "locs"), as a part of his practice as a Rastafarian, a religion/creed with origins in Jamaica that is predominately practiced by people of African descent. When Mr. Williams applied to become a firefighter with the Fire Department of the City of New York ("FDNY"), he believed that he would be able to dutifully serve his City and preserve his Rastafarian practice of wearing locs. However, on August 16, 2022, during the "run" that is the final step before securing one's place in the FDNY's Probationary Firefighter School (the "Academy"), Mr. Williams was required to cut his locs to comply with FDNY's gender-specific grooming policies. After this traumatizing ordeal and upon entering the Academy, Mr. Williams faced targeted discrimination from his supervisors, known as drill instructors ("DIs"), based on his race, sex, age, and religion and retaliation for having opposed the discriminatory requirement that he cut his hair.

3. On December 20, 2022, FDNY decided to discharge Mr. Williams from the Academy for discriminatory reasons and in retaliation for his opposition to discrimination, including various complaints Mr. Williams made in response to the discrimination against him.

Mr. Williams was instructed that he should resign in lieu of termination to preserve his ability to reapply for entrance into the Fire Academy. However, the City further retaliated against Mr. Williams, who reported his harassment to FDNY's Diversity Advocate and filed an EEO complaint with FDNY, by instructing the Department Citywide Administrative Service ("DCAS") not to restore Mr. Williams to the Civil Service List for firefighter, effectively barring him from re-entering the Fire Academy.

4. As result of Defendant's discrimination and retaliation, Mr. Williams has lost his position as a firefighter, resulting in lost pay and benefits, lost future earnings potential, reputational and emotional harm, and other compensable damages.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§1331 and 1343(a)(3)-(4), and 28 U.S.C §1367(a) for claims arising under the NYSHRL and NYCHRL, based on supplemental jurisdiction over claims that arise from a common nucleus of operative facts and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

6. Pursuant to 28 U.S.C. §1391(b), venue is proper in the United State District Court for the Southern District of New York because most of the events giving rise to the claims occurred within this District, and this Court has jurisdiction over claims against the City of New York.

7. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII. This action is founded on a timely complaint of discrimination filed with U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 520-2023-03012) that was

cross-filed with the New York State Division of Human Rights ("NYSDHR") (Case No. 102231159). After an extensive investigation, the New York State Division of Human Rights determined that "<u>PROBABLE CAUSE</u> EXISTS TO BELIEVE THAT THE Respondent [City of New York, Fire Department] has engaged in or is engaging in the unlawful discriminatory practice complained of." *See* NYSDHR Determination After Investigation, annexed hereto as Exhibit "A" (emphasis in the original). The lawsuit is commenced within ninety (90) days of Plaintiff's receipt of a notice from the United States Department of Justice of his right to sue. *See* notice of right to sue, annexed hereto as Exhibit "B."

## JURY DEMAND

8. Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## IDENTIFICATION OF THE PARTIES

9. Plaintiff Corey Williams is a 36 year old Black man who practices Rastafarianism and resides in the state of New York, Richmond County.

10. Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York. Defendant City is an employer as defined by Title VII, the NYSHRL, and the NYCHRL. Defendant City is a "person" for purposes of enforcement of the rights guaranteed under 42 U.S.C. §1983. Defendant City is or was the employer of Plaintiff.

## STATEMENT OF THE FACTS

11. On or about January 20, 2022, Mr. Williams met via Zoom FDNY Investigator Dwight Delmhorst concerning his candidacy for a firefighter position.

12. Both before and after that meeting, Mr. Williams wore his hair in shoulder-length locs. Mr. Williams was never informed during the firefighter hiring process that his hair length or style would be an issue during the pre-Academy run or at the Fire Academy, nor was he offered or told about religious accommodations to FDNY's grooming policy.

13. On or about August 16, 2022, Mr. Williams participated in the run, which candidates must pass to enter the Academy. Mr. Williams wore neatly styled, shoulder length locs in a bun. After Mr. Williams completed the run, he was approached by Drill Instructor (DI) William Cancel, who told Mr. Williams that he could not enter the Academy or participate in the initial physical conditioning without shaving his head, unless he had a note. Mr. Williams stated that he wore locs for religious reasons. DI Cancel responded, "If you don't cut it, people will mess with you." Mr. Williams complied with DI Cancel's demand to shave his locs because he did not want to lose the opportunity to complete the run and, thus, the chance to enter the Academy.

14. After successfully completing the run, Mr. Williams received a conditional offer letter on or about August 16, 2022.

15. On or about September 12, 2022, Mr. Williams began attending the Academy. That same day, DIs Cancel and Baker informed Mr. Williams that he was required to have a buzzcut and be clean shaven every day. DI Cancel stated that all male probationary firefighters are required to have their head nearly bald, and even short hair was not acceptable. DI Cancel also explained that FDNY's grooming policy for women was shoulder length hair. Mr. Williams received an FDNY Probationary Firefighter Handbook at the start of the Academy, which includes a grooming policy that, among other things, prohibits facial hair and hair decorations

and provides that a demerit card ("D-card") may issue for "Unsatisfactory Haircut". The Handbook does not state whether employees can receive accommodations for the listed grooming standards.

16. In or around September 2022, Mr. Williams was targeted by FDNY Drill Instructors, who began giving Mr. Williams D-cards because of his appearance and his questioning of the FDNY grooming policy.

17. On or about September 15, 2022, Mr. Williams received a D-card because Drill Instructors believed he was not clean-shaven. On or around September 28, Mr. Williams received a D-card for improperly wearing his uniform.

18. In or around October, DIs Baker and Kelly made negative, racially-coded statements toward Mr. Williams on a weekly basis. DI Kelly often mimicked African American vernacular when speaking to Black people, and DI Kelly and DI Baker directed their racially-coded, negative remarks specifically at Mr. Williams. DI Kelly once asked Mr. Williams, "What class you have son, you have class G?" and "You think you're thug?"

19. Mr. Williams joined the Academy at 34 years old and was one of the oldest recruits in his platoon and one of the oldest probationary firefighters in the Academy.

20. In or around October, DI Baker made negative and targeted comments about Mr. Williams' age. DI Baker asked Mr. Williams to state his age, and made comments such as, "You're too old. You're not going to make it." To Mr. Williams' knowledge, these age-related questions and comments were not made to others in Mr. Williams' squad, who were younger than Mr. Williams.

21. On or around October 21, 2022, DI Kelly approached Mr. Williams and told him, "People like you come in here and try to separate people. You're not going to change this culture."

22. On or around November 4, 2022, Mr. Williams received a D-Card for an improper shave, and the drill instructors reprimanded Mr. Williams by requiring him to do pushups.

23. On November 17, 2022, Mr. Williams received a D-card for requesting water while engaging in intense physical exercise. This occurred immediately after Mr. Williams had completed his Functional Skills Test 1 ("FST 1") training evaluation. The FST is an intense simulation of fire scenarios consisting of numerous obstacles completed with fire equipment and using a self-contained breathing apparatus. It is crucial to be well-hydrated during such activity. At least one probationary firefighter has lost his life at the Fire Academy due in part to dehydration.

24. Although the Fire Department's own documents stress the importance of stopping to hydrate, Mr. Williams's request for water was treated as unacceptable. DI Kelly told Mr. Williams, "You think you're going to change this culture" "[you are] not going to change shit. I'm not scared of you." DI Kelly further retaliated against and harassed Mr. Williams by forcing him to perform calisthenics as punishment for Kelly's perception that asking for water was not following orders. During this physical punishment, Mr. Williams briefly went to get water but received another D-card for not following orders.

25. On or about November 18, 2022, Mr. Williams was targeted again by his drill instructors. Mr. Williams's bag was searched for drugs and other contraband during the morning rollcall. DIs Cancel, Kelly, Jean-Paul, and Baker emptied all the contents of Mr. Williams's bag in front of Mr. Williams's squadron and flung the items everywhere. During the incident, DI Baker encouraged Mr. Williams to quit the Academy and threatened him physically. Mr. Williams attempted to voice his concerns to his instructors.

26. On or around 4:00 PM on November 18, 2022, Mr. Williams was given counsel (a form of discipline) for allegedly approaching one of the DIs "aggressively" during the morning incident, and "ignoring a DI while being spoken to and poor deportment." The DIs sought to further punish Mr. Williams by requiring him to write two 500-word essays on the topics of respect and discipline and maintaining bearing. Mr. Williams requested that the FDNY Diversity Advocate or union representative be present during the counsel but was denied both. Mr. Williams received a D- Card for this incident.

27. On or about November 21, 2022, Captain Cotignola issued Mr. Williams a command discipline (CD) counseling for not meeting the word count for one of the two essays. Mr. Williams again asked to speak with the Diversity Advocate but was denied. During the morning hours after roll call, Mr. Williams was directed to go behind Building 12 at the Academy to do exercises as punishment. During this punishment, DI Kelly told Mr. Williams, "You are the kind of person that comes to this agency and separate people. You see these guys - they are my brothers." The "brothers" DI Kelly was referring to were fellow Black firefighters.

28. On or about November 22, 2022, Mr. Williams was able to speak with the Diversity Advocate, Lieutenant Logan, for the first time. During his call with Lt. Logan, Mr.

Williams stated he felt that he was being targeted by his supervising drill instructors and expressed concern that reporting incidents of harassment would lead to retaliation.

29. On or around November 25, 2022, Mr. Williams received demerits because of his hair length.

30. On or around November 29, 2022, DIs Trinsic and Thomas told Mr. Williams to give them his car keys so that they could search his vehicle. When Mr. Williams voiced his concerns about the DIs violating his rights, he was told to report to another supervisor, Lt. Tobias. Mr. Williams asked to speak with the Diversity Advocate and was later allowed to report the incident to Lt. Logan over the phone. Mr. Williams expressed to Lt. Logan that he believed the Drill Instructors attempted to search his car for discriminatory reasons.

31. On or around November 29, 2022, DI Thomas told Mr. Williams to perform intense calisthenics on stage in front of Mr. Williams's squadron, Alpha Company, for two hours. DI Rodriguez remarked to Mr. Williams that the Academy "is lowering its standards to boost the numbers," and he rhetorically asked Mr. Williams, "you think you are special?"

32. On or around December 12, 2022, DI Baker gave Mr. Williams a D-card for failure to adhere to "grooming standards" and "to get a haircut."

33. On December 13, 2022, Mr. Williams was again targeted for his hair length. DI Cancel gave Mr. Williams a written counsel, a form of discipline, because of his hair length. DI Jean-Baptiste was also present. DI Cancel instructed Mr. Williams to sign the written counsel. However, Mr. Williams stated that he wanted to speak with the Diversity Advocate before he

signed anything and asked to speak with Lt. Logan. DI Cancel refused to allow Mr. Williams to speak with Lt. Logan and screamed at Mr. Williams to leave his area.

34. On or around December 13, 2022, Mr. Williams was targeted by DI Kelly and Baker in a separate incident. A bag was held over Mr. Williams's head, and he was singled out and told to run around building 12 while he held his bag over his head. DI Baker then proceeded to give Mr. Williams a D-card while his squad was held back waiting for Mr. Williams. DI Baker did not give a reason for the D-card.

35. On or around December 19, 2022, Mr. Williams received a D-card for his haircut not meeting the male grooming standards, and DI Cancel later counseled Mr. Williams. DI Cancel and DI Jean-Baptiste gave Mr. Williams his written counsel and instructed him to sign the disciplinary form. Mr. Williams asked why he was required to sign the form, and the Drill Instructors stated it was because of his haircut and nails. Mr. Williams requested to speak with Lt. Logan before signing. DI Cancel yelled at Mr. Willimas to leave his area, and Mr. Williams was not allowed to speak with Lt. Logan.

36. On or around December 20, 2023, the Training Review Board ("TRB") voted to remove Mr. Williams from the Academy. FDNY administrators Joseph Cavaretta and Lisandro Murphy contacted Mr. Williams about the TRB's decision. They gave Mr. Williams an ultimatum to resign or be terminated. Mr. Williams was told that if he resigned, he would have the opportunity to reapply for the Academy, a process that the FDNY calls "recycling." Therefore, Mr. Williams chose to resign so that he could reapply. In fact, the TRB had decided on December 202, 2023 that it would not let Mr. Williams recycle into the Academy, but this was not shared with Mr. Williams.

37. Probationary Firefighters must obtain an overall score of 75% in the Academy in order to graduate. When Mr. Williams was forced to resign, he had not yet had the chance to complete two remaining quizzes or his final exam. Mr. Williams's overall performance score was 74.32%, which would likely have exceeded 75% with the addition of the last two quizzes and his final exam score.

38. On December 21, 2022, Mr. Williams emailed the Department of Citywide Administrative Services ("DCAS") to request that his name be restored to the Firefighter Civil Service list in order to recycle into the Academy.

39. On December 21, 2022, Mr. Williams also contacted FDNY's EEO Office, where he spoke with FDNY employee Katelyn McKenna to report the discrimination he experienced while in the Academy. The report was filed as Complaint No. 2022-065.

40. On or about December 23, 2022, Lt. Logan spoke to Mr. Williams about the process of being reinstated into the Academy. Lt. Logan explained that Mr. Williams would need to contact Department Citywide Administrative Service ("DCAS") and have his name restored to the Civil Service List. Mr. Williams could then reapply to become a probationary firefighter in the next Academy cycle.

41. On or about December 27, 2022, Lt. Logan sent Mr. Williams an email instructing Mr. Williams about how to recycle into the Academy.

42. On or about February 20, 2023, Mr. Williams asked Lt. Logan whether he was barred from recycling into the Academy because the "staff voted [he] couldn't come back."

43. On or about February 23, 2023, Lt. Logan responded to Mr. Williams's February 20 email, "staff at the fire academy have no say in you being reinstated to a DCAS exam list."

44. On or about February 23, 2023, Mr. Williams received a letter from DCAS stating his name had been restored to the Firefighter Civil Service list.

45. On or about March 18, 2023, Mr. Williams contacted Lt. Logan to let him know that his name was restored to the Civil Service list. Lt. Logan stated this was impossible and a mistake.

46. On or about April 18, 2023, Mr. Williams received another email from DCAS stating that his name restoration was a mistake, and he would need to request restoration from FDNY.

47. On or about May 8, 2023, Mr. Williams received a call from DCAS informing him that his request to recycle was denied.

48. On or about July 21, 2023, Mr. Williams filed EEOC Charge No. 520-2023-03012, which led to the NYSDHR's determination of probable cause.

## AS AND FOR A FIRST CAUSE OF ACTION

### Race, Religion, and Sex Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

49.  Plaintiff re-alleges and incorporates the allegations contained in paragraphs "1" through "48" above, as if fully set forth herein.

50.  The actions of Defendant City of New York constitute discrimination based on race, religion, and sex, and retaliation for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

### Deprivation of Constitutionally- and Federally-Protected Rights Under Color of State Law, Including Race, Religion, Sex, and Age Discrimination and Retaliation in Violation of 42 U.S.C. § 1983

51.  Plaintiff re-alleges and incorporates the allegations contained in paragraphs "1" through "50" above, as if fully set forth herein.

52.  The actions of the Defendant as set forth above constitute a violation of 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

### Race, Religion, Sex, and Age Discrimination and Retaliation in Violation of New York State Human Rights Law, New York Executive Law §§ 290, 296

53.  Plaintiff re-alleges and incorporates the allegations contained in paragraphs "1" through "52" above, as if fully set forth herein.

54. The actions of the Defendant as set forth above constitute discrimination based on race, religion, sex, and age and retaliation for opposing discrimination, in violation of the New York Executive Law §§ 290 and 296.

### AS AND FOR A FOURTH CAUSE OF ACTION

**Race, Religion, Sex, and Age Discrimination and Retaliation in Violation of New York City Human Rights Law, NYC Administrative Code §§ 8-101 *et seq.***

55. Plaintiff re-alleges and incorporates the allegations contained in paragraphs "1" through "54" above, as if fully set forth herein.

56. The actions of the Defendant as set forth above constitute discrimination based on race, religion, sex, and age, and retaliation for opposing discrimination, in violation of the New York City Administrative Code §§ 8-101 *et seq.*

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered against Defendant awarding Plaintiff:

A. A declaration that Defendant violated Plaintiff's rights under federal, state and local laws as alleged herein;

B. Injunctive relief reinstating Plaintiff to a position as a probationary firefighter with retroactive seniority and benefits and enjoining Defendant from further discrimination or retaliation;

C. Equitable relief in the form of back pay and front pay;

D. Compensatory and consequential damages for the injuries Plaintiff suffered by reason of Defendant's unlawful conduct, including damages for the pain,

suffering, emotional distress, loss of dignity, humiliation and damage to reputation and livelihood endured by Plaintiff in amounts that are fair, just and reasonable, to be determined at trial;

E. Reasonable attorneys' fees and costs; and

F. Such other and further relief as the Court determines to be just and proper.

Dated: May 12, 2025
New York, New York

LEVY RATNER, P.C.

By: *(signed)* Dana E. Lossia
Alexis Boyd

80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
dlossia@levyratner.com
aboyd@levyratner.com

*Attorneys for Plaintiff Corey Williams*

TO: Counsel for City of New York